UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

<u>Michael Petersen</u>

    v.                                                      Civil No. 18-cv-212-LM
                                                              Opinion No. 2019 DNH 147
<u>Atrium Medical Corporation,</u>
<u>et al.</u>

<u>In re: Atrium Medical Corp. C-QUR</u>          MDL Docket No. 16-md-2753-LM
<u>Mesh Products Liability Litigation</u>

O R D E R

Michael Petersen brings suit against Atrium Medical Corporation ("Atrium"), a medical device company that manufactured and sold C-QUR mesh, and two related companies, Maquet Cardiovascular US Sales, LLC ("Maquet") and Getinge AB ("Getinge"), alleging product liability claims and breach of warranty claims. Petersen's suit is part of a multi-district litigation ("MDL") proceeding involving claims that C-QUR mesh was, among other things, defective and unreasonably dangerous and caused injury when surgically implanted for hernia repair. This case was selected in the MDL proceeding for the Initial Discovery Pool, making it a bellwether case. Atrium moves to dismiss on a variety of grounds.[1] Petersen objects.

---

[1] Getinge has filed a separate motion to dismiss in the main MDL case contending that the court lacks personal jurisdiction over it. That motion remains pending. Getinge and Maquet do not join in the instant motion, and instead move separately in this case to dismiss based largely on jurisdictional grounds. See doc. no. 61. The court does not address that motion in this order.

**STANDARD OF REVIEW**

Under Rule 12(b)(6), the court must accept the factual allegations in the complaint as true, construe reasonable inferences in the plaintiff's favor, and "determine whether the factual allegations in the plaintiff's complaint set forth a plausible claim upon which relief may be granted." Foley v. Wells Fargo Bank, N.A., 772 F.3d 63, 71 (1st Cir. 2014) (internal quotation marks omitted). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

**BACKGROUND**

On March 1, 2012, Petersen had hernia repair surgery in Portland, Maine. A piece of C-QUR mesh was used for the repair. On September 5, 2013, Petersen had a procedure to repair the hernia and for abdominal wall reconstruction, which was also done in Maine.

Atrium, which designed, marketed, and sold the C-QUR mesh that was implanted into Petersen, is located in New Hampshire. Petersen alleges, among other things, that defendants designed, manufactured, marketed, and sold C-QUR mesh to be used by surgeons for hernia repair. C-QUR mesh was intended to be permanently implanted for those repairs, and defendants represented that C-QUR mesh was safe and effective for that purpose. Petersen further alleges that C-QUR mesh was not safe or effective for its intended purpose, that defendants failed to adequately research and test it to determine the risks and benefits of the mesh, and that they failed to warn of risks although they had been notified that the mesh was causing widespread catastrophic complications. Petersen brings claims for negligence (Count I), strict liability – design defect (Count II), strict liability – manufacturing defect (Count III), strict liability – failure to warn (Count IV), breach of express warranty (Count V), breach of implied

warranties of merchantability and fitness of purpose (Count VI), and punitive damages (Count VII).

**DISCUSSION**

Atrium moves to dismiss Petersen's claims as time-barred under both Maine and New Hampshire statutes of limitations. It also argues that Maine law governs the liability portion of Petersen's claims and that his strict liability – manufacturing defect claim and breach of express warranty claim fail under Maine law even if those claims are not time-barred. Petersen objects, arguing that New Hampshire law governs the liability portion of his claims. To the extent he addresses Atrium's statute-of-limitations arguments, he argues only that his breach of warranty claims are not time-barred.[2]

I. Statutes of Limitations

Atrium moves to dismiss Petersen's claims as time-barred, arguing that Maine's statute of limitations for civil actions, 14 M.R.S. § 752, applies to all his claims. Under § 752, a claim must be brought within six years of when a plaintiff is injured. Although certain Maine courts have held that for statute-of-limitations purposes, a plaintiff is injured "when the injury is discovered rather than when the injury was incurred . . . such cases are few and are limited to discrete areas." Erlich v. Ouellette, Labonte, Roberge & Allen, P.A., 637 F.3d 32, 35 (1st Cir. 2011). Atrium argues that Petersen was allegedly injured on March 1, 2012, the date of his first surgery, but did not bring this suit until March 9, 2018, more than six years later.

---

[2] Petersen does not address Atrium's statute-of-limitations arguments as to his other claims.

3

Alternatively, Atrium argues that Petersen's claims are untimely under the applicable New Hampshire statutes of limitation, and that no tolling doctrine applies to save any of the claims. To the extent Petersen addresses Atrium's statute-of-limitations arguments, he contends that the court should apply New Hampshire's statutes of limitation and that certain of his claims are not time-barred.

A federal court sitting in diversity jurisdiction, as here, applies the forum state's choice-of-law rules. Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941). Under New Hampshire law, statutes of limitation are generally treated as procedural so that New Hampshire courts apply New Hampshire statutes of limitations if "either party is a New Hampshire resident or the cause of action arose in this State" without conducting a choice-of-law analysis. Waterfield v. Meredith Corp., 161 N.H. 707, 710 (2011). In limited circumstances, however, New Hampshire courts apply a foreign state's statutes of limitation. Keeton v. Hustler Magazine, Inc., 131 N.H. 6, 13-14 (1988) (internal quotation marks omitted). These circumstances include when, after a choice-of-law analysis, the court determines that another state's substantive law applies to a plaintiff's claims and one of two specific exceptions apply. Id. These two exceptions are when a foreign state's statutes of limitation either "extinguish a right or are an inherent part of a statutory scheme creating a right." Id. at 14 (internal quotation marks and citations omitted).

Atrium asserts that the Maine statute of limitations applicable to product liability claims, § 752, applies here because it would extinguish Petersen's right to sue on his claims.[3] Atrium,

---

[3] Atrium also contends that § 752 applies to Petersen's breach of warranty claims in these circumstances. Because, for the reasons discussed below, the court applies New Hampshire's statutes of limitation to Petersen's claims, it assumes without deciding that § 752 would apply to Petersen's breach of warranty claims if Maine's statutes of limitation governed here.

however, is putting the cart before the horse. Before considering whether Maine's statute of limitations would extinguish Petersen's right to sue on his claims, Atrium must first show that Maine's substantive law would apply to those claims. See Keeton, 131 N.H. at 14. Therefore, the court must first determine whether Maine or New Hampshire's substantive law applies to Petersen's claims using New Hampshire's choice-of-law principles. See Klaxon, 313 U.S. at 496; Lexington Ins. Co. v. Gen. Acc. Ins. Co. of Am., 338 F.3d 42, 46 (1st Cir. 2003).

### A. Choice-of-Law Analysis

Atrium contends that Maine has an interest in the case because Petersen's alleged injury occurred in Maine. It further contends that Maine's warranty law conflicts with New Hampshire's warranty law and that, under New Hampshire's choice-of-law principles, Maine law governs.[4] Petersen argues that a choice-of-law analysis is premature because additional factual development is necessary, that defendants have not sufficiently identified an actual conflict, and that if the court engages in a choice-of-law analysis, New Hampshire law governs.[5]

#### 1. Timeliness of choice-of-law analysis

Petersen argues that it is premature for the court to engage in a choice-of-law analysis. He contends that a choice-of-law analysis is "heavily fact dependent" and that because his case involves seven claims which are "complex and require further discovery," a choice of law cannot

---

[4] Atrium includes in its memorandum in support of its motion to dismiss a choice-of-law analysis, albeit in a section of its memorandum unrelated to its statute-of-limitations argument.

[5] Petersen agrees with Atrium that, to the extent the court engages in a choice-of-law analysis, New Hampshire choice-of-law principles govern that analysis.

5

be made now.  Doc. no. 62 at 4, 6.  Petersen states that information about defendants' liability must be obtained through discovery.

In support of his position, Petersen relies on Knightly v. Gula, No. 16-cv-124-AJ, 2016 WL 4401996 (D.N.H. Aug. 18, 2016) and Rivera v. Body Armor Outlet, LLC, No. 17-cv-512-LM, 2018 WL 1732154 (D.N.H. Apr. 10, 2018).  In Knightly, the magistrate judge explained that she could not make a determination on one factor of the choice-of-law standard because the complaint was only five pages long and she lacked sufficient information about which state had the most substantial connection to the case.  2016 WL 4401996, at *1 (internal quotation marks and citation omitted).  In Rivera, the court explained that the evidence pertaining to whether the plaintiff agreed to a choice-of-law provision was "sparse and, more importantly unclear," which was the main reason the choice-of-law issue was premature.  2018 WL 1732154, at *1.

Unlike the parties in those cases, Petersen does not explain what specific information is lacking that is necessary for the choice-of-law analysis that can be obtained only through discovery.  His complaint is thirty-two pages long, and the locations of where defendants manufactured the allegedly defective products and where Petersen had his surgery are not in dispute.  Although Petersen chose to provide little information about his own experiences and injury, that is information known to him.  As a result, Petersen has not shown that the choice-of-law issue in this case is premature at this stage.

2. Choice-of-law standard

"Under New Hampshire choice-of-law principles, when more than one state may have an interest in the suit and the choice involves substantive law, the court must first decide whether relevant New Hampshire law actually conflicts with the laws of the other interested states."  SIG Arms Inc. v. Employers Ins. of Wausau, 122 F. Supp. 2d 255, 258–59 (D.N.H. 2000).  An actual

conflict exists only when application of the laws of an interested state other than the forum would change the outcome. Lambert v. Kysar, 983 F.2d 1110, 1114 (1st Cir. 1993). When no actual conflict is shown, the court will apply the law of the forum state. Aftokinito Props, Inc. v. Millbrook Ventures, LLC, 2010 WL 3168295, at *3 (D.N.H. Aug. 9, 2010). The party who asserts that the law of another state governs in the case bears the burden of proving the content of the foreign law. SIG Arms, 122 F. Supp. 2d at 259.

      3.      Actual conflict

The parties agree that New Hampshire and Maine are interested states. Atrium asserts that an actual conflict exists between the laws of New Hampshire and Maine with respect to Petersen's breach of warranty claims, Counts V – VI.[6] Atrium argues that Maine law requires that Petersen allege that he relied on warranties made by defendants, which he did not do. Atrium notes that New Hampshire law does not require the element of reliance. While Petersen challenges the sufficiency of Atrium's showing, and the court agrees that the issue of whether there is an actual conflict is far from certain, the better course here is to presume an actual conflict, based on the merits discussion, and proceed to a choice-of-law analysis with respect to Counts V – VI.

---

[6] Atrium only identifies a purported conflict between New Hampshire and Maine law for Petersen's breach of warranty claims. Under the doctrine of depecage, "different substantive issues in a tort case may be resolved under the law of different states where the choices influencing decisions differ." Lacaillade v. Loignon Champ-Carr, Inc., No. 10-cv-68-JD, 2011 WL 4738654, at *1 (D.N.H. Oct. 7, 2011). Here, the legal standards for Petersen's claims require different elements of proof. Therefore, dépeçage requires the court to consider the choice-of-law question separately for each claim. Because Atrium does not address or identify an actual conflict with respect to New Hampshire and Maine law as to the other claims, New Hampshire law applies to the liability portion of those claims. See Aftokinito, 2010 WL 3168295, at *3.

4.     Choice of law as to breach of warranty claims

New Hampshire uses a five-factor test for choice of law: "(1) predictability of results; (2) maintenance of reasonable orderliness and good relationship among the states in our federal system; (3) simplification of the judicial task; (4) advancement by the court of its own state's governmental interests rather than those of other states; and (5) the court's preference for what it regards as the sounder rule of law." Matter of Geraghty, 169 N.H. 404, 409, 150 A.3d 386, 391 (2016). "The relative importance of each factor varies depending on the type of case." Lacaillade, 2011 WL 4738654, at *2.

The first three factors of the New Hampshire standard have little or no relevance in this case. The first factor—predictability of results—"is usually implicated only in suits involving contractual or similar consensual transactions and emphasizes the importance of applying to the parties' bargain or other dealings the law on which they agreed to rely at the outset." Stonyfield Farm, Inc. v. Agro-Farma, Inc., No. 08-cv-488-JL, 2009 WL 3255218, at *7 (D.N.H. Oct. 7, 2009) (internal quotation marks and citations omitted). Thus, the first factor has no weight here.

The second factor—maintenance of reasonable orderliness and good relationship among the states in our federal system—requires only that the court avoid applying the law of a state "which does not have substantial connection with the total facts and with the particular issue being litigated." Lessard v. Clarke, 143 N.H. 555, 557 (1999) (internal quotation marks and citation omitted). Both Maine and New Hampshire have substantial connections with the facts in this case. The surgeries occurred in Maine, and Atrium is located in New Hampshire and manufactures and sells its C-QUR mesh products here.[7]

---

[7] In their memorandum in support of their motion to dismiss, defendants argue that the second factor focuses on the state that has the most "significant relationship" to the facts of the case, and that the factor strongly weighs in favor of applying Maine law. Doc. no. 60-1 at 10. While the "significant relationship" test is used in some states, it is not used in New Hampshire.

With respect to the third factor—simplification of the judicial task—the court is of course more accustomed to New Hampshire law but could also apply Maine law with little difficulty. See Lacaillade, 2011 WL 4738654, at *3 ("Although it may be easier for a court to apply the forum state's substantive law, it certainly cannot be argued that Maine's law regarding the relevant issue is so complex as to outweigh other competing considerations."). Therefore, none of the first three factors tips the balance on the choice-of-law analysis in this case.

The fourth factor considers the advancement of the forum state's governmental interests. This factor "becomes important only when New Hampshire has a particularly strong policy in reference to local rules of law, which the other state[']s laws under consideration would fail to achieve." Stonyfield Farm, 2009 WL 3255218, at *8 (internal quotation marks, citation, and alterations omitted). "Otherwise, New Hampshire's interest is limited to the fair and efficient administration of justice." Id. (internal quotation marks and citations omitted). Here, as in many other cases, this factor is of limited importance. To the extent it carries any weight, however, it favors the application of New Hampshire law. New Hampshire has an interest in the liability of a New Hampshire company for injuries caused by its products. See, e.g., Lacaillade, 2011 WL 4738654, at *3 n.4 (noting that New Hampshire has an interest in regulating the liability of its corporations); see also Turcotte v. Ford Motor Co., 494 F.2d 173, 178 (1st Cir. 1974). Therefore, the fourth factor has little relevance but, to the extent it carries any weight, it favors the application of New Hampshire law.

The fifth factor—the sounder rule of law—"allows the court, where everything else is equal, to choose to apply [a] state's rule that it regards as wiser, sounder, and better calculated to serve the total ends of justice, especially where one state's rule lies in the backwater of the

---

TIG Ins. Co. v. EIFlow Ins. Ltd., No. 14-cv-459-JL, 2015 WL 5714686, at *4 (D.N.H. Sept. 29, 2015); Geraghty, 169 N.H. at 409.

9

modern stream." TIG, 2015 WL 5714686, at *6 (internal quotation marks and citation omitted). "As such, [this factor] tends to play a tie-breaker role in close cases." Id. (internal quotation marks and citation omitted). The sounder rule of law depends on the policies behind the conflicting laws and the court's view of "the socio-economic facts of life at the time when the court speaks." Geraghty, 169 N.H. at 412. This factor applies "even when the injury occurs out of State." LaBounty v. Am. Ins. Co., 122 N.H. 738, 743 (1982).

Atrium makes no argument as to the fifth factor, instead contending that the court need not reach that factor because the other factors weigh in its favor. As explained above, however, none of the other factors is dispositive, and the court addresses the sounder rule of law, which is necessary to resolve the choice of law.

With regard to breach of warranty claims, New Hampshire law does not impose a reliance requirement for such claims. Kelleher v. Marvin Lumber & Cedar Co., 152 N.H. 813, 842 (2005). The New Hampshire Supreme Court has stated that eliminating the requirement "supports the underlying purpose of the law of warranty, which is to determine what it is the seller has agreed to sell, thereby making reliance irrelevant." Id.

Atrium makes no argument that Maine's warranty law, requiring reliance, provides the sounder rule of law. In the absence of any theory to show that Maine provides the sounder rule of law, the fifth factor weighs in favor of New Hampshire law and tips the balance in that direction. The court will therefore apply New Hampshire law to the liability portion of Petersen's breach of warranty claims.

5. Summary

The court applies New Hampshire law to the liability portion of all of Petersen's claims. Because the court applies New Hampshire's substantive law to the claims in this case, the limited

circumstances under which this court would apply Maine's statute of limitations are not present. See Keeton, 131 N.H. at 13-14 (1988). Therefore, the court will apply New Hampshire's statutes of limitations to Petersen's claims.

B. Statutes of Limitation Analysis

Atrium argues that under New Hampshire law, Petersen's claims are time-barred under the applicable statutes of limitation. Atrium contends that Petersen's product liability claims, Counts I through IV, are governed by RSA 508:4, I, and the breach of warranty claims, Counts V and VI, are governed by RSA 382-A:2-725. Petersen does not dispute Atrium's argument.

1. Product liability claims

Under New Hampshire law, "[e]xcept as otherwise provided by law, all personal actions, . . . may be brought only within 3 years of the act or omission complained of." RSA 508:4, I. An exception to that time limit exists

> when the injury and its causal relationship to the act or omission were not discovered and could not reasonably have been discovered at the time of the act or omission, the action shall be commenced within 3 years of the time the plaintiff discovers, or in the exercise of reasonable diligence should have discovered, the injury and its causal relationship to the act or omission complained of.

RSA 508:4, I. If the defendant meets the initial burden of showing that the action was not brought within three years of the underlying events, to avoid dismissal, the plaintiff must show that the discovery rule or another tolling doctrine, such as the fraudulent concealment rule, applies. Beane v. Dana S. Beane & Co., P.C., 160 N.H. 708, 712 (2010).

Atrium argues that Petersen's product liability claims are time-barred because he had the mesh implanted in March 2012 and a second surgery in September 2013, but did not bring suit

11

until March 2018, more than three years after the second surgery.  Petersen does not respond to Atrium's statute-of-limitations argument as to his product liability claims in his objection.

Atrium has met its initial burden of showing that Petersen failed to bring this action within three years of the underlying events.  The burden then shifts to Petersen to show that the discovery rule or another tolling doctrine applies.  He has not met, or attempted to meet, that burden.  Therefore, the court grants Atrium's motion to dismiss as to Counts I – IV on statute-of-limitations grounds.

2. Breach of warranty claims

Atrium contends that Petersen's breach of warranty claims are time-barred under the New Hampshire statute of limitations, RSA 382-A:2-725.  Atrium asserts that the breach of warranty claims accrued when the mesh product was implanted, March 1, 2012, which is more than four years before Petersen brought suit on March 9, 2018.  Petersen argues that the claims are not untimely because defendants warranted the future performance of the mesh.

RSA 382-A:2-725(1) provides that "[a]n action for breach of any contract for sale must be commenced within four years after the cause of action has accrued."  "A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach."  RSA 382-A:2-725(2).  "A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered."  Id.

The discovery rule for future performance does not apply to implied warranties. Kelleher, 152 N.H. at 853.  In addition, while equitable tolling and the fraudulent concealment rule may extend the limitation period for purposes of a claim of breach of an express warranty,

12

they do not apply to breach of implied warranties claims.  Begley v. Windsor Surry Co., No. 17-cv-317-LM, 2018 WL 1401796, at *8 (D.N.H. Mar. 19, 2018) (relying on Lockheed Martin Corp. v. RFI Supply, Inc., 440 F.3d 549 (1st Cir. 2006)).  Therefore, the implied warranties claim in Count VI is untimely.

The discovery rule for future performance would apply to Petersen's breach of express warranty claim if Atrium's express language warranted the performance of the mesh for a future period of time or permanently.  Kelleher, 152 N.H. at 828.  "The district court may grant a motion to dismiss based on a defendant's affirmative defense of a statute of limitations when the pleader's allegations leave no doubt that an asserted claim is time-barred."  DeGrandis v. Children's Hosp. Boston, 806 F.3d 13, 17 (1st Cir. 2015) (internal quotation marks omitted); see also Rodi v. S. New Eng. Sch. of Law, 389 F.3d 5, 17 (1st Cir. 2004).  Taking Petersen's allegations in the light most favorable to him and resolving reasonable inferences in his favor, his allegations are sufficient to leave doubt as to the timeliness of his breach of express warranty claim.  If, as the case develops through discovery, Atrium find facts that support the statute-of-limitations defense, it may be raised at an appropriate time in a motion for summary judgment.

II. Merits of the Claims

Atrium contends that Petersen failed to adequately allege a claim for breach of express warranty in Count V under Maine law.[8]  Because Atrium has not shown that Maine law governs any of Petersen's claims, the motion is denied as to Count V.[9]

---

[8] Atrium also argues that Petersen fails to adequately allege a manufacturing defect claim in Count III.  Because the court dismisses Count III on statute-of-limitations grounds, it does not address Atrium's argument as to that claim.

[9] Petersen includes in his objection an "alternative request for leave to amend" if the court finds that any of his claims are subject to dismissal.  The court declines to rule on this

## CONCLUSION

For the foregoing reasons, Atrium's motion to dismiss (document no. 60) is denied as to Count V but is otherwise granted.

SO ORDERED.

_____
Landya B. McCafferty
United States District Judge

September 9, 2019

cc: Counsel of Record

---

request, because under Local Rule 7.1(a)(1), "[o]bjections to pending motions and affirmative motions for relief shall not be combined in one filing." Notably, the defect at issue here (i.e., the failure to present any argument in response to Atrium's statute-of-limitations defense) would not be cured by an amendment to the complaint.